**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, ) ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES POSTAL SERVICE, ) ) Defendant. ) ) | Civil Action No. 08-0980 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, the American Postal Workers Union, AFL-CIO ("Union"), initiated this action by filing what it titles as a Petition to Compel Arbitration ("Petition"), which seeks an order from the Court requiring that the defendant, the United States Postal Service ("Postal Service"),[1] to recommence arbitrating the parties' ongoing grievance dispute with Arbitrator Joe H. Henderson ("Arbitrator Henderson") under the Postal Service/Union National Agreement ("National Agreement"). See generally the Petition. The defendant does not oppose arbitrating this matter, but rather contends that the arbitration process should proceed at the national level (referred to as "Step 4" of the arbitration procedure), and not before Arbitrator Henderson (referred to as "Step 3" of the arbitration procedure). Answer ¶¶ 1, 13, 23; see also Defendant's Memorandum in

---

[1] While the plaintiff has characterized its complaint as a "petition" under 9 U.S.C. § 4 (2006), the plaintiff has also invoked the Court's jurisdiction under 39 U.S.C. §§ 409(a), 1208(b) (2006), which relates to contact disputes with the United States Postal Service. Petition ¶ 5. Through its petition, the plaintiff seeks not just the Court's command to the defendant to continue with the arbitration process, but rather the Court's judgment as to which level (Step 3 or Step 4) the parties should continue arbitrating. Id. at ¶ 22. Therefore, this matter is more akin to a contract interpretation dispute than a petition to compel arbitration as set forth in 9 U.S.C. § 4. Accordingly, the Court will refer to the parties as "plaintiff" and "defendant" instead of "petitioner" and "respondent."

Support of Its Motion for Summary Judgment ("Def.'s Mem."), Declaration of Mary Hercules ("Hercules Decl."), Ex. 1 (Grievance-Arbitration Procedure). This matter is currently before the Court on the parties' cross-motions for summary judgment.[2]

## I.  BACKGROUND

The National Agreement is a collective bargaining agreement establishing a four-step grievance procedure to resolve "dispute[s], difference[s], disagreement[s] or complaint[s] between the parties related to wages, hours, and conditions of employment." Def.'s Mem., Hercules Decl., Ex. 1 (Grievance-Arbitration Procedure) at Art. 15.1.  This four-step procedure is performed at either the district level (Step 3) or the national level (Step 4).  Id. at Art. 15.5.  Additionally,

> [i]f either party believes that a case referred to Regular [District Level] Arbitration [at Step 3 of the process] involves an interpretive issue under the National Agreement or some supplement thereto which may be of general application, that party's representative shall request input from their appropriate National Representative at the Headquarters level.  If either party's representative at the Headquarters level determines the case is interpretive, a notice will be sent to the other party.  The case will be held pending the outcome of the National interpretive dispute [at Step 4 of the process].

Id. at Art. 15.5.B.5.  Accordingly, "[o]nly cases involving interpretive issues under this Agreement . . . of general application will be arbitrated at the National level," i.e. at Step 4 of the process.  Id. at Art. 15.5.D.1.

---

[2] The Court considered the following submissions in resolving these motions: Defendant's Memorandum in Support of Its Motion for Summary Judgment ("Def.'s Mem."); Defendant's Statement of Material Facts as to Which There is No Genuine Issue; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem. & Opp'n"); Plaintiff's Statement of Material Facts Not in Dispute ("Pl.'s Stmt."); Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment; Defendant's Response to Plaintiff's Statement of Material Facts Not in Genuine Dispute; and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment.

The plaintiff's grievance, which it submitted to arbitration pursuant to the National Agreement, arose from its opposition to the defendant's decision to employ temporary workers at a Phoenix, Arizona telephone service center for a call center pilot program.  See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem. & Opp'n"), Declaration of Greg Bell ("Bell Decl."), Ex. 3 (Mar. 28, 2007 Arbitration Decision) at 4.  On March 26, 2007, Arbitrator Henderson, at Step 3 of the grievance process, found that "[t]he Union [had] met its burden of proof [by] showing that the Postal Service . . . [had] violated Article 7.1.B.4 of the National Agreement[] . . . when it used [the temporary workers] at the Telephone Center from 1995 until it[] [had] clos[ed] on October 8, 1999."  Pl.'s Mem. & Opp'n, Bell Decl., Ex. 3 (Mar. 28, 2007 Arbitration Decision) at 17; see also Plaintiff's Statement of Material Facts Not in Dispute ("Pl.'s Stmt.") ¶ 6.  Arbitrator Henderson also concluded that "[s]ince the [Phoenix telephone service] Center had closed, the remedy becomes a matter of determining who and in what amount[] the aggrieved employees should be compensated," and "if the Union, as the representative organization, is entitled to an award for the organization."  Pl.'s Mem. & Opp'n, Bell Decl., Ex. 3 (Mar. 26, 2007 Arbitration Decision) at 19.  However, Arbitrator Henderson resolved that he could not, "from the information presented[,] . . . make a specific determination as to the amount(s) the [plaintiff] and/or its members should be awarded." Id. at 20.  Accordingly, "[t]he matter [was] . . . remanded to the parties for their joint calculation of the hours worked by the Casual employees beyond the permitted days of the National Agreement[,]" along

3

with specific instruction concerning the manner in which this assessment should be calculated.  Id. at 20-21.

Arbitrator Henderson, having "retained jurisdiction over the . . . remedy," Pl.'s Stmt. ¶ 6, "[t]he parties returned their dispute to [him] for a hearing on the . . . remedy[,] [which] . . . was held on July 10, 2007," id. ¶ 7.  On August 7, 2007, Arbitrator Henderson found "that 'the total amount of the Postal Service liability' . . . is $19,717,431.00[,] . . . to be divided among clerks 'presently working in the Phoenix Customer Service Area who were employed during the period from January 1, 1996 to September 30, 1999' on a prorated basis depending on the hours each clerk was on the rolls during the period of the violation."  Id. ¶¶ 7-8 (citing Pl.'s Mem. & Opp'n, Bell Decl., Ex. 4 (Aug. 13, 2007 Arbitration Decision) at 12).  However, Arbitrator Henderson also included the limitation that "no clerk would receive more than $9,694.00," id. ¶ 8 (citing Pl.'s Mem. & Opp'n, Bell Decl., Ex. 4 at 12), and he "retain[ed] jurisdiction of th[e] matter for 90 days to assist the parties if called upon" to do so, Pl.'s Mem. & Opp'n, Bell Decl., Ex. 4 at 13.

The defendant construed the Arbitrator's remedy award, specifically the phrase "presently working," to mean "that no clerk who has left the Postal Service Phoenix Customer Service Area may share in the award," an interpretation that "reduc[ed] [its] liability below . . . $12,000,000.00[,]" given the cap of $9,694.00 that any individual clerk could be awarded.  Pl.'s Stmt. ¶ 8.  As a result of the defendant's interpretation, "[o]n or about September 21, 2007, the [plaintiff] notified the [defendant] that it was requesting the Arbitrator to hold an additional hearing" to clarify the remedy award, and therefore, presumably, whether the defendant's interpretation was appropriate.  Id. ¶ 9.  A

4

hearing was convened on November 29, 2007, wherein the plaintiff "argued that the Arbitrator's August 7, 2007 award required clarification. The [defendant] contended that the Award was final and binding and that Arbitrator Henderson could not modify it." Id. ¶ 10. "Arbitrator Henderson then requested brief[ing] from the parties on the question [of] whether . . . he still had jurisdiction to clarify or modify his award." Id.

At the November 29, 2007 hearing, a representative for the defendant "informed Arbitrator Henderson that the [defendant] would be referring the parties' dispute to the national level under Article 15.5.B.5 of the National Agreement" because it was the defendant's position that "the case 'appears to contain a newly raised interpretive issue . . . ,' that 'the issue should be referred to headquarters for review pursuant to Article 15.5.B.5,' and that '[t]he case must be held [in abeyance] pending the outcome of the national interpretive dispute.'" Id. ¶ 11 (citing Pl.'s Mem. & Opp'n, Bell Decl., Ex. 2 (Nov. 29, 2007 Letter from John W. Dockins to Kenneth DeHate)).

In a separate Memorandum of Understanding regarding the National Agreement, the parties had agreed that "[o]nce an issue is forwarded to the national level pursuant to Article 15.5.B.5, the appropriate national representative will have thirty (30) days from receipt of notification to make a determination as to whether or not to initiate a national level dispute [at Step 4 of the grievance procedure]." Pl.'s Mem. & Opp'n, Bell Decl., Ex. 6 (Memorandum of Understanding Between the United States Postal Service and the American Postal Workers Union, AFL-CIO ("Memorandum of Understanding")). "The Memorandum of Understanding . . . provide[d] that, in accordance with the parties' pre-existing agreement on procedures under Article 15.5.B.5, if a dispute is not initiated at the national level [within that thirty day period], the case must be ' . . . heard before the

same arbitrator [at Step 3] who was scheduled to hear the case at the time of referral to [the national level].'" Pl.'s Stmt. ¶ 4 (some alterations in original). Therefore, under this agreement, although the defendant indicated that it wished to initiate an interpretive dispute at the national level on November 29. 2007, and because the defendant's representative failed to initiate the process within thirty days after it referred the case to its national representative, id. ¶ 15, pursuant to Article 15 of the National Agreement and the Memorandum of Understanding, the case automatically reverted to Step 3, i.e., arbitration before Arbitrator Henderson, see Def.'s Mem. at 4; Pl.'s Mem. & Opp'n, Bell Decl., Ex. 7 (Jan. 14, 2008 Letter from Greg Bell to Steven Zamanakos) & Ex. 8 (Jan. 23, 2008 Letter from Greg Bell to Steven Zamanakos).

However, on February 1, 2008, the defendant made a second referral to its national representative because it "believe[d] that a new interpretive issue under the National Agreement . . . which may be of general application is involved in the . . . grievance." Def.'s Mem., Hercules Decl., Ex. 8 (Feb. 1, 2008 Letter from Nels W. Truelson to Steve Zamanakos). The defendant informed the plaintiff of this referral on February 11, 2008. Id., Ex. 9 (Feb. 11, 2008 Letter from Mary Hercules to William Burrus). In that letter, the defendant defined the interpretive issues as the following:

> 1. After rendering an arbitration award, does an arbitrator have the authority to change the rendered decision?
>
> 2. After rending [sic] an arbitration award, does an arbitrator have the authority to hold an evidentiary hearing for the purpose of changing the scope of the remedy awarded?
>
> 3. After rendering an arbitration award and retaining jurisdiction on the remedy, does an arbitrator have the authority to hold an evidentiary hearing ex parte after

one party asserts a referral for an interpretive review?

Id.; see also Pl.'s Mem. & Opp'n, Bell Decl., Ex. 10 (Feb. 26, 2008 Letter from Joe H. Henderson to Kenneth DeHate, Omar M. Gonzalez, Nels W. Truelson, and Steven J. Zamanakos).  The February 11, 2008 letter was forwarded to Arbitrator Henderson on March 4, 2008, Pl.'s Mem. & Opp'n, Bell Decl., Ex 11 (Mar. 4, 2008 Letter from Kenneth A. DeHate to Joe H. Henderson), and followed up by a March 18, 2008 letter from the defendant to Arbitrator Henderson reiterating that the parties "'w[ould] not proceed with regional arbitration[,]'" Pl.'s Stmt. ¶ 2, but would refer the grievances "to the fourth step of the grievance procedure[,]" Pl.'s Mem. & Opp'n, Bell Decl., Ex. 13.  In response to the defendant's letters, Arbitrator Henderson stated in a letter dated March 11, 2008, that "[n]o action will be taken by me on Regional Arbitration [at Step 3] until further notice." Pl's Stmt. ¶ 23 (internal quotation marks omitted); Pl.'s Mem. & Opp'n, Bell Decl., Ex. 14 (Mar. 11, 2008 Letter from Joe H. Henderson to Kenneth DeHate, Omar M. Gonzales, Nels W. Truelson, and Steven J. Zamanakos).

The plaintiff filed this action on June 6, 2008, see generally Petition, and the filing of the parties' cross-motions for summary judgment followed.  As grounds for its motion for summary judgment, the defendant asserts that the "grievance is properly at Step 4 of the grievance-arbitration procedure[,]" and that "any arguments which the [plaintiff] might raise that the grievance should move back to district level arbitration can and must be raised at Step 4, itself, and, if necessary, before a national arbitrator." Def.'s Mem. at 1-2.  In support of its position, the defendant claims that "[t]here is no prohibition in the National Agreement against either [party] making a second referral to headquarters in the same case" and that "[t]o the extent the [plaintiff] wishes to argue that

7

the Postal Service was not allowed to make a second referral to its headquarters . . . it may raise that interpretive argument at Step 4, and if it wishes, before a national arbitrator." Id. at 7. The defendant further contends that "such an argument [by the plaintiff] would clearly raise an interpretive issue under the National Agreement" and accordingly "federal labor policy is served by having the issue decided through the parties' chosen method of dispute resolution, not through the federal courts." Id.

By contrast, in its cross-motion for summary judgment, the plaintiff claims that the grievance remains at Step 3 of the grievance-arbitration procedure given that "[b]oth parties submitted the case to Arbitrator Henderson at the regional level for arbitration" and that "[a]fter his merits award, both parties submitted the issue of the proper remedy to him for decision." Pl.'s Mem. & Opp'n at 11.  Moreover, the plaintiff notes that "[i]n his merits and his remedy award, Arbitrator Henderson retained jurisdiction to assist the parties with any remaining problem with his award." Id. at 12.  The plaintiff further notes that "the parties' collective bargaining agreement . . . provides that arbitrability disputes are to be resolved by arbitrat[ion], . . . that all awards by arbitrators are final and binding," and "[t]hus, the Postal Service is bound by Arbitrator Henderson's reservation of jurisdiction." Id.  The plaintiff also contends that "the Article 15 procedure that permits parties to refer interpretive disputes to the national level for resolution has no applica[bility] in this case" because it "is not intended to provide a right of appeal from final and binding decisions of arbitrators." Id.  The plaintiff goes on to argue that "[i]t is also plain from the undisputed facts that the Postal Service has failed to follow the procedures of the National Agreement that must be followed to obtain arbitration of a case at the national level" by its "fail[ure] to initiate a dispute within 30 days." Id. at 12-

13.  And, the plaintiff further argues that the defendant's claimed "right to return the case to the national level a second time" would render "the requirement that the referring party initiate a dispute within 30 days . . . meaningless."  Id. at 13.  Finally, the plaintiff argues that even if the defendant's second referral were permissible under the National Agreement, the arbitration dispute brought by the defendant "is not interpretative and must be resolve at the regional level[,] [because] [o]nly interpretive issues of general application may be arbitrated at the national level."  Id. at 13.

## II.  STANDARD OF REVIEW

Summary judgment pursuant to Federal Rule of Civil Procedure 56 should be awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In evaluating the appropriateness of summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)), accepting the non-moving party's evidence as true and drawing "all justifiable inferences" in the non-moving party's favor, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, the Court need not rely on any "conclusory allegations unsupported by factual data," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted), and should only find that "there is a genuine issue for trial" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,]" Anderson, 477 U.S. at 249 (citation omitted).  Moreover, as the Supreme Court observed in Anderson, evidence that is

9

"merely colorable or . . . not significantly probative" is insufficient to defeat summary judgment.  Anderson, 477 U.S. at 249 (citation omitted).

### III.  LEGAL ANALYSIS

When "the parties have agreed to submit all questions of contract interpretation to [an] arbitrator," the "function of the court is very limited."  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-37 (1987) (quoting United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 567-68 (1960)).  "Collective-bargaining agreements . . . provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances."  Id. at 36.  "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."  Id. at 37 (citing Am. Mfg. Co., 363 U.S. at 567-68).  The interpretation of the agreement through the arbitral mechanisms will be determinative, because "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."  United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960).

Here, the plaintiff essentially seeks to have the Court find that "the [defendant] has not properly referred the parties' dispute to the national level."  Pl.'s Mem. & Opp'n at 14.  However, nothing in the parties' agreements causes to the Court to come to that conclusion.  Referrals to the national level are governed by the National Agreement and the Memorandum of Understanding.  As already set forth, the National Agreement states

that "either party" can send the parties' dispute to the national level, i.e., Step 4, by notifying the opposing party that it believes that the dispute "involves an interpretive issue under the National Agreement or some supplement thereto."  Def.'s Mem., Hercules Decl., Ex. 1 (National Agreement) at Art. 15.5.B.5.  Further, the parties agreed in their Memorandum of Understanding that "[o]nce an issue is forwarded to the national level pursuant to Article 15.5.B.5, the appropriate national representative will have thirty (30) days from receipt of notification to make a determination as to whether or not to initiate a national level dispute."  Pl.'s Mem. & Opp'n, Bell Decl., Ex. 6 (Memorandum of Understanding).

   The defendant submitted two separate referrals to its national representative for consideration as to the existence of an interpretive issue pertaining to the grievance between the parties.  Def.'s Mem. at 6.  In response to the first referral of November 29, 2007, Def.'s Mem., Hercules Decl., Ex. 3 (Nov. 29, 2007 Letter from John W. Dockins to Kenneth DeHate), the defendant's representative did not file a national level dispute within the thirty-day time period required by the Memorandum of Understanding, id. at 6.  The grievance thereafter returned to the district level under Arbitrator Henderson.  Pl.'s Stmt. ¶ 15.  However, with the defendant's second referral letter to its national representative, dated February 1, 2008, and followed by its February 11, 2008 letter to the plaintiff stating that "the [defendant was] initiating an interpretive dispute at the fourth step of the grievance/arbitration procedures . . . based on the arbitrator's apparent willingness to re-open the case for the explicit purpose of changing his rendered award[,]" the Step 4 process was initiated.  Def.'s Mem., Hercules Decl., Ex. 9 (Feb. 11, 2008 Letter from Mary Hercules to William Burrus).

11

While the plaintiffs contend that this second referral to the national level was improper because "a right to return the case to the national level a second time is insupportable," Pl.'s Mem. & Opp'n at 13, that position is not supported by the parties' agreements. See United Paperworkers, 484 U.S. at 36. Acceptance of the plaintiff's position would require the Court to interpret the National Agreement and Memorandum of Understanding as including a one-time limitation on the parties' opportunity to submit a dispute to the national level at Step 4 of the process, which neither the National Agreement nor the Memorandum of Understanding expressly prohibit. Absent any evidence that the agreements between the parties were not bargained-for contracts, the Court will not interfere with the terms of their agreements by reading into them prohibitions that are not expressly provided, 14 Penn Plaza LLC v. Pyett, __ U.S. __, __, 129 S. Ct. 1456, 1464 (2009) ("Courts generally may not interfere in th[e] bargained-for exchange [of an arbitration provision in a collective-bargaining agreement]."), as doing so would depart from a plain reading of the agreements, see Carey Can., Inc. v. Colum. Cas. Co., 940 F.2d 1548, 1556 ("If the language found in the [contract] is not ambiguous or otherwise susceptible of more than one meaning, the court's duty is to apply the plain meaning of the words and phrases used to the facts before it. The court is without authority to rewrite the policy or add meaning to it that is not there."). A plain and common-sense reading of the National Agreement and Memorandum of Understanding allows for multiple referrals of interpretive issues,[3] and it appears that Arbitrator Henderson was of the opinion that the process was at Step 4 when he indicated that he

---

[3] While, as the plaintiff states, an agreement without any limits on the number of referral permitted by a party could in theory be abused by a party seeking continuous or frivolous referrals, see Pl.'s Mem. & Opp'n at 13, there is no indication in the record that would cause the Court conclude that any such abuse was committed here.

would take no further action in the case "until further notice."  See Pl.'s Mem. & Opp'n, Bell Decl., Ex. 14 (Mar. 11, 2008 Letter from Joe H. Henderson to Kenneth DeHate, Omar M. Gonzales, Nels W. Truelson, and Steven J. Zamanakos).  The Court is therefore without authority to find that the defendant's referral of the parties' dispute to Step 4 of the grievance-arbitration procedure was improper, and accordingly this matter will be returned to the bargained-for grievance process for resolution of the dispute pursuant to the National Agreement's Step 4 procedures.[4]

## IV.  CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment must be granted and the plaintiff's motion for summary judgment must be denied.[5]

```
                          _____/s/_____
                          REGGIE B. WALTON
                          United States District Judge
```

---

[4] The plaintiff's position that the defendant's characterization of the dispute as interpretive is legally or substantively unsupportable, Pl.'s Mem. & Opp'n at 13, is not a question for this Court to address but rather is a question for the national arbitrator at Step 4 of the process because addressing the issue will necessary require weighing the merits of the underlying grievance.  See United Paperworkers, 484 U.S. at 36 (stating that it is not for the Court to "weigh[] the merits of the grievance . . . or determin[e] whether there is particular language in the written instrument which will support the claim." (citing Am. Mfg. Co., 363 U.S. at 567-68)).

[5] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

13